IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| E. BELINDA BAUER, as Trustee of the Craig E. Bauer Insurance Trust | : : : : | CIVIL ACTION |
| Plaintiff, | : : | 09-cv-0397 |
| v. | : : | |
| RELIANCE STANDARD LIFE INSURANCE COMPANY, | : : : | |
| Defendant. | : | |

### MEMORANDUM AND ORDER

Joyner, J.                                                January 28, 2010

Before the Court is Plaintiff's Motion for Summary Judgment (Doc. Nos. 19, 20), Defendant's Cross-Motion for Summary Judgment (Doc. No. 22), and Plaintiff's response thereto (Doc. No. 23). For the reasons set forth in this Memorandum, the Court grants summary judgment in favor of Defendant.

### I. BACKGROUND[1]

This is an action brought pursuant to the Employee Retirement and Security Act ("ERISA"), 20 U.S.C. § 1001, et. seq. Defendant Reliance Standard Life Insurance Company

---

[1] In analyzing a motion for summary judgment, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). In this case, the parties do not dispute the key facts of the case.

1

("Reliance") issued decedent's employer a policy providing group Accidental Death and Dismemberment coverage. Under the terms of the Accidental Death and Dismemberment Policy ("the Plan"), in the event of an accidental death, the "Principal Sum" is payable to the beneficiary. The "Principal Sum" payable in the event of accidental death is, "5 times Base Annual Earnings to a maximum of $250,000."

When Craig Bauer died in June 2006, he was insured under the Plan which was issued by Defendant. In Spring of 2006, Mr. Bauer traveled for business to Brazil, China, and Japan. On June 24, 2006, after returning from Brazil, Mr. Bauer suffered acute respiratory failure, had a rash all over his body, and suffered from a cough and fever. Mr. Bauer was admitted to the hospital. He later died from bacterial meningitis on June 25, 2006.

Thereafter, E. Belinda Bauer ("Ms. Bauer") submitted a claim for benefits to Reliance as the trustee of the Bauer Trust. Ms. Bauer was the beneficiary of the Plan and as such she expected to receive $1,250,000. However, on July 30, 2007, Reliance denied Ms. Bauer's claim for benefits claiming that the records did not support a finding that Mr. Bauer's death was due to bacterial infection as a result of accidental ingestion, and that the loss was not due to an accidental bodily injury resulting directly and independently of all other causes.

Ms. Bauer appealed that decision. She submitted medical

records and the expert medical opinion of Dr. Ronald Nahass, an infectious disease specialist. On March 19, 2008, Reliance Standard reversed its earlier decision and granted Ms. Bauer's claim for benefits. Reliance payed Ms. Bauer a benefit payment of $250,000, plus interest on May 8, 2008.

However, Ms. Bauer believed she was entitled to $1,250,000 under the Plan and again wrote to Reliance contesting its decision. On July 31, 2008, Ms. Bauer appealed Reliance's benefits determination. On November 21, 2008, Reliance affirmed its determination and said that the benefit amount paid, $250,000 plus interest, was in accordance with the Plan. On January 28, 2009, Ms. Bauer filed this suit in which she seeks modification of Reliance's benefits determination.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the moving party establishes the absence of a genuine issue of material

fact, the burden shifts to the non-moving party to "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." Kaucher v. County of Bucks, 456 F.3d 418, 423 (3d Cir. 2006) (quoting Wetzel v. Tucker, 139 F.3d 380, 383 n. 2 (3d Cir. 1998)).

The Court will use a deferential abuse of discretion standard in conducting our review. Courts reviewing the decisions of ERISA plan administrators or fiduciaries in civil enforcement actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B) should apply a deferential abuse of discretion standard of review across the board. Estate of Schwing v. Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009). Any conflict of interest should be one of several factors considered when determining whether the administrator or the fiduciary abused its discretion. Id. In light of Glenn, a "sliding scale" approach is no longer valid. See Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct. 2343, 2350 (2008). We also recognize that, as in Schwing, "[o]ur prior caselaw referenced an 'arbitrary and capricious' standard of review, while Glenn describes the standard as 'abuse of discretion.' We . . . recognize[] that, at least in the ERISA

4

context, these standards of review are practically identical." Schwing, 562 F.3d at 526 n. 2 (citing Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 n.4 (3d Cir. 1993)).

## III. Discussion

The dispute between the parties hinges on the language which defines the "Principal Sum" in the Plan. The Plan defines the "Principal Sum" as "5 times Base Annual Earnings to a maximum of $250,000." When Defendant was evaluating Plaintiff's claim, it interpreted that language to mean that Plaintiff was entitled to a maximum payment of $250,000. Plaintiff, however, believes that the language entitles her to $1,250,000 which is five times a base of $250,000.

### A. Ambiguity

In ERISA cases, if a plan administrator's challenged decision relates to the interpretation of the terms of a plan's document, the Court must first consider whether the plan's language is ambiguous. Bill Gray Enterprises, Inc. Employee Health & Welfare Plan v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001). A plan administrator has discretion when interpreting the terms of the plan; however, the interpretation may not controvert the plain language of the document. Gaines v. Amalgamated Ins. Fund, 753 F.2d 288, 289 (3d Cir. 1985). A court must uphold a plan administrator's interpretation, even if it disagrees with

it, so long as the administrator's interpretation is, "rationally related to a valid plan purpose and is not contrary to the plain language of the plan." DeWitt v. Penn-Del Directory Co., 106 F.3d 514, 520 (3d Cir. 1997).

Whether terms in an ERISA plan document are ambiguous is a question of law. Bill Gray Enterprises, 248 F.3d at 218. A term is ambiguous if it is subject to reasonable alternative interpretations. Taylor v. Cont'l Group Change in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir. 1991). In determining whether a particular clause in a plan document is ambiguous, courts must first look to the plain language of document. In Re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 58 F.3d 896, 902 (3d Cir. 1995). If the plain language of the document is clear, courts must not look to other evidence. In re Unisys Corp. Long-Term Disability Plan ERISA Litig., 97 F.3d 710, 715 (3d Cir. 1996). But if the plain language leads to two reasonable interpretations, courts may look to extrinsic evidence to resolve any ambiguities in the plan document. Bill Gray Enterprises, 248 F.3d at 218. If the terms are unambiguous, then any actions that are inconsistent with the terms of the document are arbitrary. However, actions that are reasonably consistent with unambiguous plan language are not arbitrary. Id.

The Plan agreement states that the Principal Sum is equal to, "5 times Base Annual Earnings to a maximum of $250,000."

This statement could reasonably be read to support both the Plaintiff's and the Defendant's interpretation. Plaintiff argues that the phrase "to a maximum of $250,000" modified the base salary term. Plaintiff also argues that the fact that Defendant altered that language in subsequent agreements is proof that Plaintiff's interpretation of the language is correct. Plaintiff finally argues that the section of the Plan titled, "Aggregate Limit of Liability" which limits the total amount of benefits paid to $1,250,000 per accident, supports her reading of the "Principal Sum."

Defendant argues that the definition of the "Principal Sum" supports its decision awarding $250,000. Defendant also argues that the Plan's "Aggregate Limit of Liability" does not support Plaintiff's conclusion. Defendant states that the "Aggregate Limit of Liability" merely limits the amount which can be awarded per accident, not per individual loss. Defendant argues that since the Plan is a group policy, there is a risk that more than one insured could potentially suffer a loss in a single accident and that the language in this section limits the total exposure of the company per accident and has no bearing on the benefit amount which can be awarded to a single claimant.

Despite the arguments of both parties to the contrary, the Court finds the language defining the "Principal Sum" to be ambiguous based on the plain language of the document. The fact

that the Defendant later changed the language is not proof of Plaintiff's reading. If anything, the fact that the language was later changed is additional proof of the ambiguity. Additionally, Defendant has adequately explained why the "Aggregate Limit of Liability" does not contradict the "Principal Sum" term. Finally, the Court will not resort to grammatical niceties or technicalities of punctuation to add a degree of clarity to language which is ambiguous on its face, especially given that we are reviewing the decision under an "abuse of discretion" standard.

**B. Reasonable Interpretation**

If the reviewing court determines the terms of a plan document are ambiguous, it must then take the additional step and analyze whether the plan administrator's interpretation of the document is reasonable. <u>Bill Gray Enterprises</u>, 248 F.3d at 218. In determining whether a plan's interpretation of a document is reasonable, a court must look to: (1) whether the interpretation is consistent with the goals of the plan; (2) whether the interpretation renders any plan language internally inconsistent or meaningless; (3) whether the administrator has interpreted the words at issue consistently; (4) whether the interpretation conflicts with the substantive or procedural requirements of ERISA; and (5) whether the interpretation is contrary to the clear language of the plan. <u>Moench v. Robertson</u>, 62 F.3d 553,

566 (3d Cir. 1995).

The Court finds that Defendant's interpretation of the terms was reasonable. Defendant's interpretation is consistent with the goal of the Plan, to provide accidental death benefits. Additionally, Defendant's interpretation does not render any other terms meaningless. As Defendant explained, the "Aggregate Limit of Liability" refers to the maximum amount of money which can be awarded per accident and not per individual loss. Therefore, Defendant's interpretation is consistent with the rest of the Plan. Defendant's interpretation also does not conflict with any ERISA requirements. Finally, the Administrative Record confirms that Defendant has interpreted the Plan's language consistently in at least one other claim. Therefore, the Court finds Defendant's interpretation to be reasonable and grants summary judgment in favor of Defendant.